HERMEION JAY McLAURIN      \*   IN THE
1431 N. 12th St.
Reading, PA 19604           \*   CIRCUIT COURT

     and                  \*   FOR

JANICE LAWS               \*   PRINCE GEORGE'S COUNTY
1610 Heatfield Rd.
Baltimore, MD 21239,        \*   Case No. *CAL16 - 46240*

        Plaintiffs,         \*

     v.                     \*

PICCARD ENTERPRISES, LLC ·     \*
d/b/a Quality Inn Hotel in Camp Springs,
Maryland                   \*
7871 Belle Point Dr.
Greenbelt, MD 20770         \*

     Serve on:   Richard B. Schreibstein    \*
               Registered Agent
               10480 Little Patuxent Pkwy.   \*
               Suite 800
               Columbia, MD 21044      \*

and                       \*

CHOICE HOTELS INTERNATIONAL,    \*
INC.
10820 Hanna St.             \*
Beltsville, MD 20705

                         \*

     Serve on:   Paul Yao Kouakou
               Resident Agent         \*
               13001 Firestone Ct.
               Silver Spring, MD 20904,     \*

     Defendants.

         \*    \*    \*    \*    ooo0ooo    \*   \*·   \*   \*

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiffs Hermeion Jay McLaurin and Janice Laws file this Complaint against

Defendants Piccard Enterprises, LLC and Choice Hotels International, Inc. for civil rights

violations. Plaintiffs seek compensatory and punitive damages exceeding $75,000 for Defendants' racial discrimination against them in the provision of services at the Quality Inn in Camp Springs, Maryland, and allege as follows:

## INTRODUCTION

1.     This action arises as a result of discriminatory acts committed by Piccard Enterprises, LLC, d/b/a the Quality Inn Hotel in Camp Springs, Maryland ("the Quality Inn"), and its employees, against Mr. McLaurin and Ms. Laws because of their race. The Quality Inn is an agent of its franchisor, Choice Hotels International, Inc. ("Choice Hotels"). On November 7, 2015, Mr. McLaurin and Ms. Laws, both African-American guests at the Quality Inn, were refused service at the Quality Inn's breakfast bar equal to that provided to guests of other races. In retaliation for Mr. McLaurin's protest of this unfair, humiliating, and discriminatory treatment, the Quality Inn evicted him from the hotel.

2.     Plaintiffs bring this case under the Civil Rights Act of 1866, as amended by the Civil Rights Act of 1991, 42 U.S.C. § 1981 ("Section 1981"), and Prince George's County Code §§ 2-209 and 2-220.

## JURISDICTION AND VENUE

3.     This Court has jurisdiction over this action pursuant to Md. Code Ann., Cts. & Jud. Proc. §§ 1-501 and 4-401, because the amount in controversy exceeds $30,000.

4.     This Court has jurisdiction over Defendants pursuant to Md. Code Ann., Cts. & Jud. Proc. §§ 6-102 and 6-103, because Defendants are headquartered in and do business in the State, and the actions complained of herein arose in the State.

2

5.     Venue in this Court is proper pursuant to Md. Code Ann., Cts. & Jud. Proc. § 6-201, and Md. Code Ann., State Gov't § 20-1202(c), because Defendants do regular business in this District and the cause of action arose in this District.

## PARTIES

6.     Plaintiff Hermeion Jay McLaurin is a citizen of Pennsylvania and a resident of Reading, Pennsylvania. Mr. McLaurin is African American.

7.     Plaintiff Janice Laws is a citizen of Maryland and a resident of Baltimore, Maryland. Ms. Laws is African American.

8.     Defendant Piccard Enterprises, LLC, is a Maryland corporation registered to do business in Maryland with headquarters in Greenbelt, Maryland. On information and belief, Jayesh B. Patel is its managing member.

9.     Defendant Choice Hotels International, Inc., is a Delaware corporation registered to do business in Maryland with headquarters in Rockville, Maryland.

## FACTUAL ALLEGATIONS

### *The Quality Inn Discriminates Against Mr. McLaurin*

10.    On November 6, 2015, Mr. McLaurin and his wife checked into the Quality Inn hotel located at 4783 Allentown Road, Camp Springs, Maryland 20746.

11.    Mr. McLaurin's wife is a Gold Member of Choice Privileges, the Choice Hotels rewards program. Choice Hotels allows Mr. McLaurin to make reservations using his wife's points. When travelling, Mr. McLaurin stays at Choice Hotels franchisees whenever possible. On this occasion, he chose to stay at the Quality Inn in reliance on the privileges that come with the Choice Privileges membership. He also chose this hotel because it offered a free breakfast.

3

12.     The McLaurins booked their reservation at the Quality Inn through the Choice Hotels reservation phone line. They paid for their room using points earned through the Choice Privileges program.

13.     The cost of breakfast is included in the price of a room at the Quality Inn.

14.     At the time the McLaurins checked in, they were given a ticket for breakfast the next morning.

15.     When Mr. McLaurin went to breakfast on November 7, 2015, he left his ticket in his room. Mr. McLaurin entered the breakfast area and stood near the cereal table. He observed a woman putting out food for hotel guests. On information and belief, this woman was named "Bethel" and was an employee of the Quality Inn.

16.     Before Mr. McLaurin could serve himself any food, Bethel approached him and demanded that he produce his ticket for breakfast. Mr. McLaurin explained that he had forgotten the ticket in his room and offered to show Bethel his room card. Bethel insisted that Mr. McLaurin could not take any food until he showed her his breakfast ticket. Mr. McLaurin returned to his room to collect his ticket.

17.     Mr. McLaurin shared an elevator back down to the breakfast room with a group of Asian guests at the hotel. When he exited the elevator and entered the breakfast area, Bethel came over to him and once again demanded his ticket. When he produced it, she walked away without asking for tickets from the Asian guests.

18.     Mr. McLaurin followed Bethel and inquired why she did not ask the other guests for their tickets. Bethel responded, "We don't ask Chinese."

*The Quality Inn Discriminates Against Ms. Laws*

19.     Ms. Laws also checked into the Quality Inn on the evening of November 6, 2015.

4

20.     When Ms. Laws went downstairs for breakfast on November 7, 2015, she observed several Asian and white guests in the breakfast area. Ms. Laws stood in line for food behind a number of Asian and white guests.

21.     Ms. Laws observed a woman who appeared to be wearing a uniform wiping down tables. As Ms. Laws stood in line, this woman—on information and belief, "Bethel"—came over to her and asked for her breakfast ticket. Ms. Laws told Bethel that she had her room card, but Bethel demanded the ticket. Ms. Laws refused to leave the line to retrieve her ticket. Bethel left without approaching any Asian or white guests to ask for their tickets.

22.     The white guests in line behind Ms. Laws appeared confused and asked her why Bethel had approached her.

23.     Ms. Laws sat down at a table with a white, female guest. The white woman told her that she had seen what had happened to Ms. Laws, that it "wasn't right," and that she had "noticed them doing that." The white woman confirmed to Ms. Laws that no hotel employee had asked to see her breakfast ticket. The white woman then left the table.

24.     Ms. Laws observed Bethel approach Mr. McLaurin and Mr. McLaurin give Bethel his ticket.

### *Mr. McLaurin and Ms. Laws Compare Experiences*

25.     Mr. McLaurin sat next to Ms. Laws. Ms. Laws told Mr. McLaurin that the Quality Inn employee had demanded that Ms. Laws, too, produce her breakfast ticket. Mr. McLaurin and Ms. Laws called Bethel over to their table. They asked why only they had been asked to show their breakfast tickets and not the Asian or white guests. Bethel, who spoke limited English, said that her manager had told her only to ask the "begitos," or a similar word. Mr. McLaurin and Ms. Laws asked Bethel whether that meant she was to ask only black people,

5

and Bethel enthusiastically responded, "Yes!" Ms. Laws clarified that Bethel had not been told to check the tickets of guests of other races, and Bethel confirmed that she had not.

26.     After Bethel left, another black woman came over to Mr. McLaurin and Ms. Laws's table, because, she said, they looked troubled. When asked, that woman said she, too, had been asked for her breakfast ticket.

27.     At some point during the morning, Ms. Laws observed a black woman with two children and a white man come into the breakfast area together. Bethel tapped the black woman on the shoulder and asked for her breakfast ticket. The white man said that the woman and children were with him and showed her his ticket. Bethel walked away without taking the ticket.

28.     Later, the white man came over to Mr. McLaurin and Ms. Laws's table. He told Mr. McLaurin that Bethel had asked for his girlfriend's ticket and tickets for her children, but · that she had refused to take his ticket, telling him that she did not want his ticket, only the tickets for the others. The white man said that at that point, he told Bethel that the woman and her children were with him, and she left them alone.

### *Mr. McLaurin Is Evicted After Protesting This Discriminatory Treatment*

29.     Upset by what he had experienced and witnessed, Mr. McLaurin went to the front -desk. He spoke with the clerk, who on information and belief gave her name as "Myesha." Mr. McLaurin told Myesha what Bethel had told him regarding asking only black guests for breakfast tickets and demanded to speak with the manager. Myesha informed him that the manager was not there. Bethel joined them and confirmed to Myesha that the manager told her to ask only black guests for their tickets. Myesha denied Mr. McLaurin's complaints, so he returned to his table.

6

30.  · A man who on information and belief gave his name as "Wilfredo" and was another employee of the Quality Inn approached Ms. Laws and Mr. McLaurin at their table and stated that the hotel had a contract with a group of Asian tourists who were staying at another hotel but eating breakfast at the Quality Inn, and that was why the Asian individuals were not asked for their tickets. Mr. McLaurin asked how the Quality Inn could know which people belonged to the tour group and which did not. Wilfredo admitted that they could not tell. Wilfredo did not explain why the hotel had not asked white guests for their tickets.

31.  A short time later, Myesha approached Mr. McLaurin in the company of another man and told Mr. McLaurin that he would have to leave the hotel if he did not stop "making a commotion." Mr. McLaurin responded that he wanted to get the names of witnesses to file a report. Myesha told him that he would have to leave because he was causing trouble, and that if her manager had been there, the situation would have been worse for Mr. McLaurin. Mr. McLaurin went to his room to get his luggage and then left the hotel.

32.  Over the course of the next week, Mr. McLaurin called and left several messages for the manager at the Quality Inn but received no response. Mr. McLaurin finally reached the manager by phone approximately one week after the incident. The manager, who on information and belief gave his name as "Mr. Patel," became angry when he heard from Mr. McLaurin, accused him of creating a "ruckus" at his hotel, and refused to give him the full names of his employees. He did not deny that the Quality Inn had a policy of asking only black guests to produce breakfast tickets, nor did he give any indication that his employees had acted outside of their authority.

33.  Ms. Laws has suffered emotional pain and mental anguish as a result of the discriminatory treatment against her.

7

34.     Mr. McLaurin also has suffered emotional pain and mental anguish as a result of the discriminatory treatment against him. He felt embarrassed to be singled out at the hotel and treated as though he did not have a right to be there. He thinks about the incident frequently. As a result of the incident, he has become more distrustful of others and how they treat him.

### Relationship Between Choice Hotels and the Quality Inn

35.     On information and belief, Choice Hotels is the franchisor for the Quality Inn.

36.     Choice Hotels manages the Choice Privileges program, of which the McLaurins are members. Choice Privileges members receive special benefits at Choice Hotel franchises, including the Quality Inn.

37.     According to its SEC Form 10-K for 2015, Choice Hotels "benefit[s] from the economies of scale inherent in the franchising business" by keeping "a focus on hotel franchising instead of ownership." Choice Hotels, SEC Form 10-K, at 5 (2015).[1]  The business model of Choice Hotels is based on the fact that consumers are more likely to desire a hotel associated with a recognizable brand. *Id.* at 8. Choice Hotels believes that "leveraging" its "large and well-known brands" is key to increasing the company's growth, *id.* at 9, and it increases brand awareness through national, regional, and local marketing campaigns as well as through the Choice Privileges loyalty program, *id.* at 10, 20.

38.     Choice Hotels provides a marketing and reservation system to its franchisees and collects a fee from its franchisees for its use. It seeks to drive business through the central reservation system, as rates are typically higher when consumers use the system rather than book directly with the franchisee. *Id.* at 20. Choice Hotels is obligated by its franchise agreements to

---

[1] Public companies are required to use Form 10-K to submit an annual report to the U.S. Securities and Exchange Commission on their businesses and financial condition.

use the fee it charges for its marketing and reservation system for "system-wide support activities," which include marketing to consumers to "enhance awareness and increase consumer preference for our brands." *Id.* at 5. Choice Hotels states that its "operating system . . . focuses on delivering guests to our franchised hotels." *Id.*

39.     Choice Hotels also supplies its franchisees with "support services," which include "central reservation and property management systems, marketing and advertising programs, training and education programs, revenue enhancement services and relationships with qualified vendors to streamline purchasing processes and make lower cost products available." *Id.* at 8. It dispatches its franchise services area directors to work directly with franchisees to maximize profits and improve marketing. *Id.* at 20.

40.     Choice Hotels controls many of the essential aspects of the business of its franchisees. It enforces quality standards in housekeeping, maintenance, brand identification, and service offerings, and it requires certain mandatory training for owners and general managers. *Id.* at 21. It instructs Quality Inn franchisees to "deliver where it counts" though five "brand hallmarks," referred to as the "Value Qs." Two of the Value Qs are:

> ▪ **Q Breakfast** – Free breakfast offering hot, fresh, and healthy menu options, and
>
> ▪ **Q Service** – Professional, responsive and friendly staff.

Choice Hotels takes other actions to enforce consistency and quality among its franchisees, including conducting unannounced reviews, reviewing guest surveys, and subjecting non-compliant franchisees to consequences ranging from written warnings to termination. *Id.* at 9, 19.

9

## COUNT I
### Violation of 42 U.S.C. § 1981
### (On behalf of all Plaintiffs against all Defendants)

41.     The allegations of fact contained in the preceding paragraphs are incorporated by reference.

42.     Section 1981 guarantees to all persons the right to make and enforce contracts, including the enjoyment of all benefits, privileges, terms, and conditions of their contractual relationships, without regard to race.

43.     Plaintiffs met the standards for occupancy and had a contract with the Quality Inn for accommodations that included a free breakfast.

44.     Pursuant to a racially discriminatory policy, the Quality Inn required black guests, but not guests of other races, to produce tickets to obtain the breakfast that was included in the cost of their rooms.  Because Mr. McLaurin and Ms. Laws are black, the Quality Inn and its employee singled them out at the breakfast bar and forced them to prove their right to eat there, while guests of other races were not similarly treated.  Thus, the Quality Inn denied Mr. McLaurin and Ms. Laws the equal enjoyment of all of the accommodations that were available to hotel guests of other races and provided services to Mr. McLaurin and Ms. Laws in a hostile, unreasonable, and discriminatory manner on account of their race.

45.     The Quality Inn is liable for its own discriminatory policy as well as for the discriminatory acts of its employees committed on its behalf and for its benefit and which it directed and/or ratified.

46.     The discriminatory acts of the Quality Inn and its employees were committed with malice or with reckless indifference to Mr. McLaurin and Ms. Laws's rights.

10

47.     Choice Hotels is liable for the acts of its franchisee, the Quality Inn, because it intentionally held out its franchisee to customers as a member of the Quality Inn brand, knowing that doing so was likely to, and in this case did, attract customers in reliance on the quality of service provided by Choice Hotels.

48.     Choice Hotels is also liable for the acts of its franchisee, the Quality Inn, because it attracts and directs customers, including Mr. McLaurin, to the Quality Inn through the Choice Privileges loyalty program.

49.     Choice Hotels is also liable for the acts of its franchisee, the Quality Inn, because it exercises significant control over the actions of the Quality Inn, including requiring the Quality Inn to offer its guests free breakfast.

50.     Breakfast service is within the actual and apparent authority given by Choice Hotels to the employees of its franchisees, including the Quality Inn.

51.     As a result of Defendants' wrongful conduct, Mr. McLaurin and Ms. Laws are entitled to compensatory and punitive damages, as well as their attorneys' fees and expenses.

## COUNT II
### Retaliation in violation of 42 U.S.C. § 1981
### (On behalf of Plaintiff Hermeion Jay McLaurin against all Defendants)

52.     The allegations of fact contained in the preceding paragraphs are incorporated by reference.

53.     Section 1981 prohibits retaliation against persons for attempting to enforce their right to the enjoyment of all benefits, privileges, terms, and conditions of their contractual relationships, without regard to race.

54.     On November 7, 2015, the Quality Inn discriminated against Mr. McLaurin when it denied him service at the breakfast bar equal to that provided to guests of other races.

11

55.    Mr. McLaurin protested this unfair treatment to employees of the Quality Inn. He also informed the Quality Inn employees that he intended to file a complaint against the hotel.

56.    As a result of Mr. McLaurin's protest and stated intention to file a complaint, employees of the Quality Inn evicted him from the hotel. This constituted retaliation in violation of Section1981.

57.    The Quality Inn is liable for the retaliatory actions of its employees committed on its behalf and for its benefit and which it directed and/or ratified.

58.    The discriminatory acts of the Quality Inn and its employees were committed with malice or with reckless indifference to Mr. McLaurin's rights.

59.    Choice Hotels is liable for the acts of its franchisee, the Quality Inn, because it intentionally held out its franchisee to customers as a member of the Quality Inn brand, knowing that doing so was likely to, and in this case did, attract customers in reliance on the quality of service provided by Choice Hotels.

60.    Choice Hotels is also liable for the acts of its franchisee, the Quality Inn, because it attracts and directs customers, including Mr. McLaurin, to the Quality Inn through the Choice Privileges loyalty program.

61.    Choice Hotels is also liable for the acts of its franchisee, the Quality Inn, because it exercises significant control over the actions of the Quality Inn, including requiring the Quality Inn to offer its guests free breakfast.

62.    Breakfast service is within the actual and apparent authority given by Choice Hotels to the employees of its franchisees, including the Quality Inn.

63.    As a result of Defendants' wrongful conduct, Mr. McLaurin is entitled to compensatory and punitive damages, as well as attorneys' fees and expenses.

12

## COUNT III
### Violation of Prince George's County Code § 2-220
### (On behalf of all Plaintiffs against all Defendants)

64.     The allegations of fact contained in the preceding paragraphs are incorporated by reference.

65.     The Prince George's County Code forbids the owner or operator of a place of public accommodation, or his agent or employee, from denying to any person on account of race any of the accommodations, advantages, facilities, or privileges available at their place of public accommodation.

66.     The Quality Inn is a place of public accommodation because it provides lodging to transient guests.

67.     Mr. McLaurin and Ms. Laws met the standards for occupancy and had a contract with the Quality Inn for accommodations that included a free breakfast.

68.     Pursuant to a racially discriminatory policy, the Quality Inn required black guests, but not guests of other races, to produce tickets to obtain the breakfast that was included in the cost of their rooms. Because Mr. McLaurin and Ms. Laws are black, the Quality Inn and its employee singled them out at the breakfast bar and forced them to prove their right to eat there, while guests of other races were not similarly treated. Thus, the Quality Inn denied Mr. McLaurin and Ms. Laws the equal enjoyment of all of the accommodations, facilities, and privileges that were available to hotel guests of other races and provided services to Mr. McLaurin and Ms. Laws in a hostile, unreasonable, and discriminatory manner on account of their race.

13

69.     The Quality Inn is liable for its own discriminatory policy as well as for the discriminatory acts of its employees committed on its behalf and for its benefit and which it directed and/or ratified.

70.     The discriminatory acts of the Quality Inn and its employees were committed with malice or with reckless indifference to Mr. McLaurin and Ms. Laws's rights.

71.     Choice Hotels is liable for the acts of its franchisee, the Quality Inn, because it intentionally held out its franchisee to customers as a member of the Quality Inn brand, knowing that doing so was likely to, and in this case did, attract customers in reliance on the quality of service provided by Choice Hotels.

72.     Choice Hotels is also liable for the acts of its franchisee, the Quality Inn, because it attracts and directs customers, including Mr. McLaurin, to the Quality Inn through the Choice Privileges loyalty program.

73.     Choice Hotels is also liable for the acts of its franchisee, the Quality Inn, because it exercises significant control over the actions of the Quality Inn, including requiring the Quality Inn to offer its guests free breakfast.

·   74.     Breakfast service is within the actual and apparent authority given by Choice Hotels to the employees of its franchisees, including the Quality Inn.

75.     On April 27, 2016, Mr. McLaurin and Ms. Laws filed a complaint with the Prince George's County Human Relations Commission against Quality Inn and Choice Hotels for public accommodations discrimination and retaliation.  Mr. McLaurin and Ms. Laws recounted the allegations of fact above in their complaint.

14

76.     As a result of Defendants' wrongful conduct, Mr. McLaurin and Ms. Laws are entitled to compensatory and punitive damages, including damages for humiliation and embarrassment, as well as their attorneys' fees and expenses.

## COUNT IV
### Retaliation in violation of Prince George's County Code § 2-209
### (On behalf of Plaintiff Hermeion Jay McLaurin against all Defendants)

77.     The allegations of fact contained in the preceding paragraphs are incorporated by reference.

78.     The Prince George's County code prohibits retaliation against persons for protesting a violation of their right to enjoy the accommodations, facilities, advantages, or privileges available at a place of public accommodation without regard to race.

79.     On November 7, 2015, the Quality Inn discriminated against Mr. McLaurin when it denied him service at the breakfast bar equal to that provided to guests of other races.

80.     Mr. McLaurin protested this unfair treatment to employees of the Quality Inn. He also informed the Quality Inn employees that he intended to file a complaint against the hotel.

81.     As a result of Mr. McLaurin's protest and stated intention to file a complaint, employees of the Quality Inn evicted him from the hotel. This constituted retaliation in violation of the Prince George's County Code.

82.     The Quality Inn is liable for the retaliatory actions of its employees committed on its behalf and for its benefit and which it directed and/or ratified.

83.     The discriminatory acts of the Quality Inn and its employees were committed with malice or with reckless indifference to Mr. McLaurin's rights.

84.     Choice Hotels is liable for the acts of its franchisee, the Quality Inn, because it intentionally held out its franchisee to customers as a member of the Quality Inn brand, knowing

that doing so was likely to, and in this case did, attract customers in reliance on the quality of service provided by Choice Hotels.

85.     Choice Hotels is also liable for the acts of its franchisee, the Quality Inn, because it attracts and directs customers, including Mr. McLaurin, to the Quality Inn through the Choice Privileges loyalty program.

86.     Choice Hotels is also liable for the acts of its franchisee, the Quality Inn, because it exercises significant control over the actions of the Quality Inn, including requiring the Quality Inn to offer its guests free breakfast.

87.     Breakfast service is within the actual and apparent authority given by Choice Hotels to the employees of its franchisees, including the Quality Inn.

88.     On April 27, 2016, Mr. McLaurin a complaint with the Prince George's County Human Relations Commission against Quality Inn and Choice Hotels for public accommodations discrimination and retaliation. Mr. McLaurin recounted the allegations of fact above in his complaint.

89.     As a result of Defendants' wrongful conduct, Mr. McLaurin is entitled to compensatory and punitive damages, including damages for humiliation and embarrassment, as well as attorneys' fees and expenses.

## RELIEF SOUGHT

WHEREFORE, Plaintiffs request that this Court:

A.     Enter a declaratory judgment that Defendants have violated Plaintiffs' rights under 42 U.S.C. § 1981 and the Prince George's County Code;

16

B.      Award each Plaintiff compensatory damages against the Defendants, jointly and severally, that fully compensate Plaintiffs for their lost services, unequal treatment, emotional pain, mental anguish, humiliation, and embarrassment;

C.      Award Plaintiffs punitive damages against each Defendant;

D.      Award Plaintiffs their reasonable attorneys' fees and costs, as provided by 42 U.S.C. § 1988(b) and Md. Code Ann., State Gov't § 20-1202; and

E.      Grant such other and further relief as the court may deem just and proper.

Respectfully submitted,

Andrew D. Freeman
Jean M. Zachariasiewicz
Abigail A. Graber
BROWN, GOLDSTEIN & LEVY, LLP
120 E. Baltimore Street, Suite 1700
Baltimore, MD 21202
Tel: (410) 962-1030
Fax: (410) 385-0869
adf@browngold.com
jmz@browngold.com
agraber@browngold.com

Date: December 22, 2016            *Attorneys for Plaintiffs*

17

## DEMAND FOR JURY TRIAL

Pursuant to Rule 2-325, Plaintiffs hereby demand a trial by jury in conjunction with the

above referenced case.

Andrew D. Freeman

BROWN GOLDSTEIN & LEVY, LLP

12 2017