**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION**

| | |
|---|---|
| HERMEION JAY MCLAURIN and <br> JANICE LAWS, <br><br>       Plaintiffs, <br><br>     v. <br><br> PICCARD ENTERPRISES, LLC, and <br> CHOICE HOTELS INTERNATIONAL, <br> INC.., <br>       Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> )    Case No. 8:17-cv-00489-PX <br> ) <br> ) <br> ) <br> ) <br> ) |

**ANSWER AND DEFENSES OF DEFENDANT CHOICE HOTELS INTERNATIONAL
TO PLAINTIFFS' COMPLAINT AND DEMAND FOR JURY TRIAL**

Defendant, Choice Hotels International Inc. ("Defendant Choice Hotels"), by counsel, hereby submits its Answer and Defenses to Plaintiffs' Complaint and Demand for Jury Trial ("Complaint") as follows:

## INTRODUCTION

1.     This action arises as a result of discriminatory acts committed by Piccard Enterprises, LLC, d/b/a the Quality Inn Hotel in Camp Springs, Maryland ("the Quality Inn"), and its employees, against Mr. McLaurin and Ms. Laws because of their race. The Quality Inn is an agent of its franchisor, Choice Hotels International, Inc. ("Choice Hotels"). On November 7, 2015, Mr. McLaurin and Ms. Laws, both African-American guests at the Quality Inn, were refused service at the Quality Inn's breakfast bar equal to that provided to guests of other races. In retaliation for Mr. McLaurin's protest of this unfair, humiliating, and discriminatory treatment, the Quality Inn evicted him from the hotel.

**ANSWER:**    **Paragraph 1 of the Complaint contains legal conclusions that do not require a response from Defendant Choice Hotels. To the extent a response is necessary, Defendant Choice Hotels admits that Plaintiffs purport to bring causes of action for alleged**

discrimination against Defendant Choice Hotels, but Defendant Choice Hotels denies it violated any laws with regard to Plaintiffs. Defendant Choice Hotels admits Quality Inn is its franchisee. Defendant Choice Hotels denies any remaining allegations contained in Paragraph 1.

2.      Plaintiffs bring this case under the Civil Rights Act of 1866, as amended by the Civil Rights Act of 1991, 42 U.S.C. § 1981 ("Section 1981"), and Prince George's County Code §§ 2-209 and 2-220.

**ANSWER: Paragraph 2 of the Complaint contains legal conclusions that do not require a response from Choice Hotels. To the extent a response is necessary, Defendant Choice Hotels admits that Plaintiffs purport to bring causes of action under the statutes enumerated in Paragraph 2 against Defendant Choice Hotels, but denies that it violated any laws with regard to Plaintiffs. Defendant Choice Hotels denies any remaining allegations contained in Paragraph 2.**

## JURISDICTION AND VENUE

3.      This Court has jurisdiction over this action pursuant to Md. Code Ann., Cts. & Jud. Proc. §§ 1-501 and 4-401, because the amount in controversy exceeds $30,000.

**ANSWER:    Defendant Choice Hotels admits the United States District Court for the District of Maryland has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1367. Defendant Choice Hotels denies the remaining allegations contained in Paragraph 3.**

4.      This Court has jurisdiction over Defendants pursuant to Md. Code Ann., Cts. & jud. Proc. §§ 6-102 and 6-103, because Defendants are headquartered in and do business in the State, and the actions complained of herein arose in the state.

**ANSWER**:    Defendant Choice Hotels admits the United States District Court for the District of Maryland has jurisdiction over Defendants in relation to this action. Defendant Choice Hotels admits that it is headquartered in and does business in the State of Maryland.  Defendant Choice Hotels denies that it violated any law with respect to Plaintiffs and denies any remaining allegations contained in Paragraph 4.

5.      Venue in this Court is proper pursuant to Md. Code Ann., Cts. & Jud. Proc. 6-201, and Md. Code Ann., State Gov't 20-1202-(c), because Defendants do regular business in this District and the cause of action arose in this District.

**ANSWER:    Defendant Choice Hotels admits venue in the United States District Court for the District of Maryland is proper and admits that it does business in the State of Maryland. Defendant Choice Hotels denies any remaining allegations contained in Paragraph 5.**

## PARTIES

6.      Plaintiff Hermeion Jay McLaurin is a citizen of Pennsylvania and a resident of Reading, Pennsylvania. Mr. McLaurin is African American.

**ANSWER:    Defendant Choice Hotels lacks sufficient information to either admit or deny the allegations contained in Paragraph 6 of the Complaint.  To the extent that any additional response is deemed to be required, Defendant Choice Hotels denies the allegations contained in Paragraph 6.**

7.      Plaintiff Janice Laws is a citizen of Maryland and a resident of Baltimore, Maryland.  Ms. Laws is African American.

**ANSWER: Defendant Choice Hotels lacks sufficient information to either admit or deny the allegations contained in Paragraph 7 of the Complaint.  To the extent that any**

additional response is deemed to be required, Defendant Choice Hotels denies the allegations contained in Paragraph 7.

8.      Defendant Piccard Enterprises, LLC, is a Maryland corporation registered to do business in Maryland with headquarters in Greenbelt, Maryland.  On information and belief Jayesh B. Patel is its managing member.

**ANSWER:  Defendant Choice Hotels admits Defendant Piccard Enterprises, LLC is a Maryland corporation registered to do business in Maryland.  Defendant Choice Hotels lacks sufficient information to either admit or deny the remaining allegations contained in Paragraph 8 of the Complaint.  To the extent that any additional response is deemed to be required, Defendant Choice Hotels denies the remaining allegations contained in Paragraph 8.**

9.      Defendant Choice Hotels International, Inc. is a Delaware corporation registered to do business in Maryland with headquarters in Rockville, Maryland.

**ANSWER:  Defendant Choice Hotels admits the allegations contained in Paragraph 9 of the Complaint.**

<u>**FACTUAL ALLEGATIONS**</u>

10.      On November 6, 2015, Mr. McLaurin and his wife checked into the Quality Inn hotel located at 4783 Allentown Road, Camp Springs, Maryland 20746.

**ANSWER: Defendant Choice Hotels admits that a person named Sherrell McLaurin checked into the Quality Inn on November 6, 2015.  Defendant Choice Hotels lacks sufficient information to either admit or deny the remaining allegations contained in Paragraph 10 of the Complaint.  To the extent that any additional response is deemed to be**

required, Defendant Choice Hotels denies the remaining allegations contained in Paragraph 10.

11.     Mr. McLaurin's wife is a Gold Member of Choice Privileges, the Choice Hotels rewards program. Choice Hotels allows Mr. McLaurin to make reservations using his wife's points. When travelling, Mr. McLaurin stays at Choice Hotels franchisees whenever possible. On this occasion, he chose to stay at the Quality Inn in reliance on the privileges that come with the Choice Privileges membership. He also chose this hotel because it offered a free breakfast.

**ANSWER: Defendant Choice Hotels admits that a person named Sherrell McLaurin is a member of the Choice Privileges program, but denies that she was a Gold Member in that program as of November 6, 2015. Defendant Choice Hotels lacks sufficient information to either admit or deny the remaining allegations contained in Paragraph 11 of the Complaint. To the extent that any additional response is deemed to be required, Defendant Choice Hotels denies the allegations contained in Paragraph 11.**

12.     The McLaurins booked their reservation at the Quality Inn through the Choice Hotels reservation phone line. They paid for their room using points earned through the Choice Privileges program.

**ANSWER: Defendant Choice Hotels lacks sufficient information to either admit or deny the allegations contained in Paragraph 12 of the Complaint. To the extent that any additional response is deemed to be required, Defendant Choice Hotels denies the allegations contained in Paragraph 12.**

13.     The cost of breakfast is included in the price of a room at the Quality Inn.

**ANSWER:     Defendant Choice Hotels admits that guests at the Quality Inn are not required to pay for breakfast.**

14.     At the time the McLaurins checked in, they were given a ticket for breakfast the next morning.

**ANSWER:     Defendant Choice Hotels lacks sufficient information to either admit or deny the allegations contained in Paragraph 14 of the Complaint.  To the extent that any additional response is deemed to be required, Defendant Choice Hotels denies the allegations contained in Paragraph 14.**

15.     When Mr. McLaurin went to breakfast on November 7, 2015, he left his ticket in his room. Mr. McLaurin entered the breakfast area and stood near the cereal table. He observed a woman putting out food for hotel guests. On information and belief, this woman was named "Bethel" and was an employee of the Quality Inn.

**ANSWER:     Defendant Choice Hotels lacks sufficient information to either admit or deny the allegations contained in Paragraph 15 of the Complaint.  To the extent that any additional response is deemed to be required, Defendant Choice Hotels denies the allegations contained in Paragraph 15.**

16.     Before Mr. McLaurin could serve himself any food, Bethel approached him and demanded that he produce his ticket for breakfast. Mr. McLaurin explained that he had forgotten the ticket in his room and offered to show Bethel his room card. Bethel insisted that Mr. McLaurin could not take any food until he showed her his breakfast ticket. Mr. McLaurin returned to his room to collect his ticket.

**ANSWER:     Defendant Choice Hotels lacks sufficient information to either admit or deny the allegations contained in Paragraph 16 of the Complaint.  To the extent that any additional response is deemed to be required, Defendant Choice Hotels denies the allegations contained in Paragraph 16.**

17.     Mr. McLaurin shared an elevator back down to the breakfast room with a group of Asian guests at the hotel. When he exited the elevator and entered the breakfast area, Bethel came over to him and once again demanded his ticket. When he produced it, she walked away without asking for tickets from the Asian guests.

**ANSWER:     Defendant Choice Hotels lacks sufficient information to either admit or deny the allegations contained in Paragraph 17 of the Complaint.  To the extent that any additional response is deemed to be required, Defendant Choice Hotels denies the allegations contained in Paragraph 17.**

18.      Mr. McLaurin followed Bethel and inquired why she did not ask the other guests for their tickets. Bethel responded, "We don't ask Chinese."

**ANSWER:     Defendant Choice Hotels lacks sufficient information to either admit or deny the allegations contained in Paragraph 18 of the Complaint.  To the extent that any additional response is deemed to be required, Defendant Choice Hotels denies the allegations contained in Paragraph 18.**

19.     Ms. Laws also checked into the Quality Inn on the evening of November 6, 2015.

**ANSWER:     Defendant Choice Hotels admits the allegations contained in Paragraph 19 of the Complaint.**

20.     When Ms. Laws went downstairs for breakfast on November 7, 2015, she observed several Asian and white guests in the breakfast area. Ms. Laws stood in line for food behind a number of Asian and white guests.

**ANSWER:     Defendant Choice Hotels lacks sufficient information to either admit or deny the allegations contained in Paragraph 20 of the Complaint.  To the extent that any**

additional response is deemed to be required, Defendant Choice Hotels denies the allegations contained in Paragraph 20.

21.     Ms. Laws observed a woman who appeared to be wearing a uniform wiping down tables. As Ms. Laws stood in line, this woman—on information and belief, "Bethel"—came over to her and asked for her breakfast ticket. Ms. Laws told Bethel that she had her room card, but Bethel demanded the ticket. Ms. Laws refused to leave the line to retrieve her ticket. Bethel left without approaching any Asian or white guests to ask for their tickets.

**ANSWER:**     **Defendant Choice Hotels lacks sufficient information to either admit or deny the allegations contained in Paragraph 21 of the Complaint.  To the extent that any additional response is deemed to be required, Defendant Choice Hotels denies the allegations contained in Paragraph 21.**

22.     The white guests in line behind Ms. Laws appeared confused and asked why Bethel had approached her.

**ANSWER:**     **Defendant Choice Hotels lacks sufficient information to either admit or deny the allegations contained in Paragraph 22 of the Complaint.  To the extent that any additional response is deemed to be required, Defendant Choice Hotels denies the allegations contained in Paragraph 22.**

23.     Ms. Laws sat down at a table with a white, female guest. The white woman told her that she had seen what had happened to Ms. Laws, that it "wasn't right," and that she had "noticed them doing that." The white woman confirmed to Ms. Laws that no hotel employee had asked to see her breakfast ticket. The white woman then left the table.

**ANSWER:**     **Defendant Choice Hotels lacks sufficient information to either admit or deny the allegations contained in Paragraph 23 of the Complaint.  To the extent that any**

**additional response is deemed to be required, Defendant Choice Hotels denies the allegations contained in Paragraph 23.**

24.     Ms. Laws observed Bethel approach Mr. McLaurin and Mr. McLaurin give Bethel his ticket.

**ANSWER:     Defendant Choice Hotels lacks sufficient information to either admit or deny the allegations contained in Paragraph 24 of the Complaint.  To the extent that any additional response is deemed to be required, Defendant Choice Hotels denies the allegations contained in Paragraph 24.**

25.     Mr. McLaurin sat next to Ms. Laws. Ms. Laws told Mr. McLaurin that the Quality Inn employee had demanded that Ms. Laws, too, produce her breakfast ticket. Mr. McLaurin and Ms. Laws called Bethel over to their table. They asked why only they had been asked to show their breakfast tickets and not the Asian or white guests. Bethel, who spoke limited English, said that her manager had told her only to ask the "begitos," or a similar word. Mr. McLaurin and Ms. Laws asked Bethel whether that meant she was to ask only black people, and Bethel enthusiastically responded, "Yes!" Ms. Laws clarified that Bethel had not been told to check the tickets of guests of other races, and Bethel confirmed that she had not.

**ANSWER:     Defendant Choice Hotels lacks sufficient information to either admit or deny the allegations contained in Paragraph 25 of the Complaint.  To the extent that any additional response is deemed to be required, Defendant Choice Hotels denies the allegations contained in Paragraph 25.**

26.     After Bethel left, another black woman came over to Mr. McLaurin and Ms. Laws's table, because, she said, they looked troubled. When asked, that woman said she, too, had been asked for her breakfast ticket.

**ANSWER:** Defendant Choice Hotels lacks sufficient information to either admit or deny the allegations contained in Paragraph 26 of the Complaint. To the extent that any additional response is deemed to be required, Defendant Choice Hotels denies the allegations contained in Paragraph 26.

27.    At some point during the morning, Ms. Laws observed a black woman with two children and a white man come into the breakfast area together. Bethel tapped the black woman on the shoulder and asked for her breakfast ticket. The white man said that the woman and children were with him and showed her his ticket. Bethel walked away without taking the ticket.

**ANSWER:** Defendant Choice Hotels lacks sufficient information to either admit or deny the allegations contained in Paragraph 27 of the Complaint. To the extent that any additional response is deemed to be required, Defendant Choice Hotels denies the allegations contained in Paragraph 27.

28.    Later, the white man came over to Mr. McLaurin and Ms. Laws's table. He told Mr. McLaurin that Bethel had asked for his girlfriend's ticket and tickets for her children, but that she had refused to take his ticket, telling him that she did not want his ticket, only the tickets for the others. The white man said that at that point, he told Bethel that the woman and her children were with him, and she left them alone.

**ANSWER:** Defendant Choice Hotels lacks sufficient information to either admit or deny the allegations contained in Paragraph 28 of the Complaint. To the extent that any additional response is deemed to be required, Defendant Choice Hotels denies the allegations contained in Paragraph 28.

29.    Upset by what he had experienced and witnessed, Mr. McLaurin went to the front desk. He spoke with the clerk, who on information and belief gave her name as "Myesha." Mr.

McLaurin told Myesha what Bethel had told him regarding asking only black guests for breakfast tickets and demanded to speak with the manager. Myesha informed him that the manager was not there. Bethel joined them and confirmed to Myesha that the manager told her to ask only black guests for their tickets. Myesha denied Mr. McLaurin's complaints, so he returned to his table.

**ANSWER: Defendant Choice Hotels lacks sufficient information to either admit or deny the allegations contained in Paragraph 29 of the Complaint. To the extent that any additional response is deemed to be required, Defendant Choice Hotels denies the allegations contained in Paragraph 29.**

30. A man who on information and belief gave his name as "Wilfredo" and was another employee of the Quality Inn approached Ms. Laws and Mr. McLaurin at their table and stated that the hotel had a contract with a group of Asian tourists who were staying at another hotel but eating breakfast at the Quality Inn, and that was why the Asian individuals were not asked for their tickets. Mr. McLaurin asked how the Quality Inn could know which people belonged to the tour group and which did not. Wilfredo admitted that they could not tell. Wilfredo did not explain why the hotel had not asked white guests for their tickets.

**ANSWER: Defendant Choice Hotels lacks sufficient information to either admit or deny the allegations contained in Paragraph 30 of the Complaint. To the extent that any additional response is deemed to be required, Defendant Choice Hotels denies the allegations contained in Paragraph 30.**

31. A short time later, Myesha approached Mr. McLaurin in the company of another man and told Mr. McLaurin that he would have to leave the hotel if he did not stop "making a commotion." Mr. McLaurin responded that he wanted to get the names of witnesses to file a

report. Myesha told him that he would have to leave because he was causing trouble, and that if her manager had been there, the situation would have been worse for Mr. McLaurin. Mr. McLaurin went to his room to get his luggage and then left the hotel.

**ANSWER:  Defendant Choice Hotels lacks sufficient information to either admit or deny the allegations contained in Paragraph 31 of the Complaint.  To the extent that any additional response is deemed to be required, Defendant Choice Hotels denies the allegations contained in Paragraph 31.**

32.     Over the course of the next week, Mr. McLaurin called and left several messages for the manager at the Quality Inn but received no response. Mr. McLaurin finally reached the manager by phone approximately one week after the incident. The manager, who on information and belief gave his name as "Mr. Patel," became angry when he heard from Mr. McLaurin, accused him of creating a "ruckus" at his hotel, and refused to give him the full names of his employees. He did not deny that the Quality Inn had a policy of asking only black guests to produce breakfast tickets, nor did he give any indication that his employees had acted outside of their authority.

**ANSWER:  Defendant Choice Hotels lacks sufficient information to either admit or deny the allegations contained in Paragraph 32 of the Complaint.  To the extent that any additional response is deemed to be required, Defendant Choice Hotels denies the allegations contained in Paragraph 32.**

33.     Ms. Laws has suffered emotional pain and mental anguish as a result of the discriminatory treatment against her.

**ANSWER:** **Defendant Choice Hotels denies it engaged in discriminatory treatment against Ms. Laws and denies the remaining allegations contained in Paragraph 33 of the Complaint.**

34.     Mr. McLaurin also has suffered emotional pain and mental anguish as a result of the discriminatory treatment against him. He felt embarrassed to be singled out at the hotel and treated as though he did not have a right to be there. He thinks about the incident frequently. As a result of the incident, he has become more distrustful of others and how they treat him.

**ANSWER:** **Defendant Choice Hotels denies it engaged in discriminatory treatment against Mr. McLaurin and denies the remaining allegations contained in Paragraph 34 of the Complaint.**

35.     On information and belief, Choice Hotels is the franchisor for the Quality Inn.

**ANSWER:** **Defendant Choice Hotels admits the allegations contained in Paragraph 35 of the Complaint.**

36.     Choice Hotels manages the Choice Privileges program, of which the McLaurins are members. Choice Privileges members receive special benefits at Choice Hotel franchises, including the Quality Inn.

**ANSWER:** **Defendant Choice Hotels admits the allegations contained in Paragraph 36 of the Complaint.**

37.      According to its SEC Form 10-K for 2015, Choice Hotels "benefit[s] from the economies of scale inherent in the franchising business" by keeping "a focus on hotel franchising instead of ownership." Choice Hotels, SEC Form 10-K, at 5 (2015). The business model of Choice Hotels is based on the fact that consumers are more likely to desire a hotel associated with a recognizable brand. *Id.* at 8. Choice Hotels believes that "leveraging" its "large and well-known

brands" is key to increasing the company's growth, *id.* at 9, and it increases brand awareness through national, regional, and local marketing campaigns as well as through the Choice Privileges loyalty program, *id.* at 10, 20.

**ANSWER:** **Paragraph 37 of the Complaint repeats statements from Defendant Choice Hotel's SEC Form 10-K for 2015; thus, a response from Defendant Choice Hotels is not required. To the extent a response is necessary, Defendant Choice Hotels states the document speaks for itself, and Defendant Choice Hotels denies any allegations contained in Paragraph 37 which are inconsistent with the text thereof.**

38.     Choice Hotels provides a marketing and reservation system to its franchisees and collects a fee from its franchisees for its use. It seeks to drive business through the central reservation system, as rates are typically higher when consumers use the system rather than book directly with the franchisee. *Id.* at 20. Choice Hotels is obligated by its franchise agreements to use the fee it charges for its marketing and reservation system for "system-wide support activities," which include marketing to consumers to "enhance awareness and increase consumer preference for our brands." *Id.* at 5. Choice Hotels states that its "operating system . . . focuses on delivering guests to our franchised hotels." *Id.*

**ANSWER:** **Paragraph 38 of the Complaint repeats statements from Defendant Choice Hotel's SEC Form 10-K for 2015; thus, a response from Defendant Choice Hotels is not required. To the extent a response is necessary, Defendant Choice Hotels states the document speaks for itself, and Defendant Choice Hotels denies any allegations contained in Paragraph 38 which are inconsistent with the text thereof.**

39.     Choice Hotels also supplies its franchisees with "support services," which include "central reservation and property management systems, marketing and advertising programs,

training and education programs, revenue enhancement services and relationships with qualified vendors to streamline purchasing processes and make lower cost products available." *Id.* at 8. It dispatches its franchise services area directors to work directly with franchisees to maximize profits and improve marketing. *Id.* at 20.

**ANSWER:** **Paragraph 39 of the Complaint repeats statements from Defendant Choice Hotel's SEC Form 10-K for 2015; thus, a response from Defendant Choice Hotels is not required. To the extent a response is necessary, Defendant Choice Hotels states the document speaks for itself, and Defendant Choice Hotels denies any allegations contained in Paragraph 39 which are inconsistent with the text thereof.**

40.     Choice Hotels controls many of the essential aspects of the business of its franchisees. It enforces quality standards in housekeeping, maintenance, brand identification, and service offerings, and it requires certain mandatory training for owners and general managers. *Id.* at 21.  It instructs Quality Inn franchisees to "deliver where it counts" through five "brand hallmarks," referred to as the "Value Qs." Two of the Value Qs are:

- Q Breakfast — Free breakfast offering hot, fresh, and healthy menu options, and
- Q Service — Professional, responsive and friendly staff

Choice Hotels takes other actions to enforce consistency and quality among its franchisees, including conducting unannounced reviews, reviewing guest surveys, and subjecting non-compliant franchisees to consequences ranging from written warnings to termination. *Id.* at 9, 19.

**ANSWER:** **Defendant Choice Hotels denies the allegations in the first sentence of Paragraph 40 of the Complaint.   The remaining portions of Paragraph 40 of the Complaint repeats statements from Defendant Choice Hotel's SEC Form 10-K for 2015; thus, a response from Defendant Choice Hotels is not required.   To the extent a response is necessary,**

Defendant Choice Hotels states the document speaks for itself, and Defendant Choice Hotels denies any allegations contained in Paragraph 40 which are inconsistent with the text thereof.

## COUNT I
### Violation of 42 U.S.C. § 1981
### (On behalf of all Plaintiffs against all Defendants)

41.     The allegations of fact contained in the preceding paragraphs are incorporated by reference.

**ANSWER:     Defendant Choice Hotels restates and reincorporates by reference its answers and responses to Paragraphs 1 through 40 above as if fully set forth herein, in response to Paragraph 41 of the Complaint.**

42.     Section 1981 guarantees to all persons the right to make and enforce contracts, including the enjoyment of all benefits, privileges, terms, and conditions of their contractual relationships, without regard to race.

**ANSWER:     Paragraph 42 of the Complaint contains legal conclusions that do not require a response from Defendant Choice Hotels.  To the extent a response is necessary, Defendant Choice Hotels denies it violated any law with regard to Plaintiffs.**

43.     Plaintiffs met the standards for occupancy and had a contract with the Quality Inn for accommodations that included a free breakfast.

**ANSWER:     Defendant Choice Hotels lacks sufficient information to either admit or deny the allegations contained in Paragraph 43 of the Complaint.  To the extent that any additional response is deemed to be required, Defendant Choice Hotels denies the allegations contained in Paragraph 43.**

44.     Pursuant to a racially discriminatory policy, the Quality Inn required black guests, but not guests of other races, to produce tickets to obtain the breakfast that was included in the cost of their rooms. Because Mr. McLaurin and Ms. Laws are black, the Quality Inn and its employee

singled them out at the breakfast bar and forced them to prove their right to eat there, while guests of other races were not similarly treated. Thus, the Quality Inn denied Mr. McLaurin and Ms. Laws the equal enjoyment of all of the accommodations that were available to hotel guests of other races and provided services to Mr. McLaurin and Ms. Laws in a hostile, unreasonable, and discriminatory manner on account of their race.

**ANSWER:** **The allegations contained in Paragraph 44 of the Complaint are alleged against Defendant Quality Inn; thus, a response from Defendant Choice Hotels is not required. To the extent that any additional response is deemed to be required, Defendant Choice Hotels lacks sufficient information to either admit or deny the allegations contained in Paragraph 44 of the Complaint. To the extent that any further response is deemed to be required, Defendant Choice Hotels denies the allegations contained in Paragraph 44.**

45.     The Quality Inn is liable for its own discriminatory policy as well as for the discriminatory acts of its employees committed on its behalf and for its benefit and which it directed and/or ratified.

**ANSWER:** **The allegations contained in Paragraph 45 of the Complaint are alleged against Defendant Quality Inn; thus, a response from Defendant Choice Hotels is not required. To the extent that any additional response is deemed to be required, Defendant Choice Hotels denies the allegations contained in Paragraph 45.**

46.     The discriminatory acts of the Quality Inn and its employees were committed with malice or with reckless indifference to Mr. McLaurin and Ms. Laws's rights.

**ANSWER:** **The allegations contained in Paragraph 46 of the Complaint are alleged against Defendant Quality Inn; thus, a response from Defendant Choice Hotels is**

**not required. To the extent that any additional response is deemed to be required, Defendant Choice Hotels denies the allegations contained in Paragraph 46.**

47.     Choice Hotels is liable for the acts of its franchisee, the Quality Inn, because it intentionally held out its franchisee to customers as a member of the Quality Inn brand, knowing that doing so was likely to, and in this case did, attract customers in reliance on the quality of service provided by Choice Hotels.

**ANSWER:     Defendant Choice Hotels denies the allegations contained in Paragraph 47 of the Complaint.**

48.     Choice Hotels is also liable for the acts of its franchisee, the Quality Inn, because it attracts and directs customers, including Mr. McLaurin, to the Quality Inn through the Choice Privileges loyalty program.

**ANSWER:     Defendant Choice Hotels denies the allegations contained in Paragraph 48 of the Complaint.**

49.     Choice Hotels is also liable for the acts of its franchisee, the Quality Inn, because it exercises significant control over the actions of the Quality Inn, including requiring the Quality Inn to offer its guests free breakfast.

**ANSWER:     Defendant Choice Hotels denies the allegations contained in Paragraph 49 of the Complaint.**

50.     Breakfast service is within the actual and apparent authority given by Choice Hotels to the employees of its franchisees, including the Quality Inn.

**ANSWER:     Defendant Choice Hotels denies the allegations contained in Paragraph 50 of the Complaint.**

51.     As a result of Defendants' wrongful conduct, Mr. McLaurin and Ms. Laws are entitled to compensatory and punitive damages, as well as their attorneys' fees and expenses.

**ANSWER:     Defendant Choice Hotels denies it engaged in wrongful conduct and denies the remaining allegations contained in Paragraph 51 of the Complaint.**

### COUNT II
### Retaliation in violation of 42 U.S.C. § 1981
### (On behalf of Plaintiff Hermeion Jay McLaurin against all Defendants)

52.     The allegations of fact contained in the preceding paragraph are incorporated by reference.

**ANSWER:     Defendant Choice Hotels restates and reincorporates by reference its answers and responses to Paragraphs 1 through 51 above as if fully set forth herein, in response to Paragraph 52 of the Complaint.**

53.     Section 1981 prohibits retaliation against persons for attempting to enforce their right to the enjoyment of all benefits, privileges, terms, and conditions of their contractual relationships, without regard to race.

**ANSWER:     Paragraph 53 of the Complaint contains legal conclusions that do not require a response from Defendant Choice Hotels.  To the extent a response is necessary, Defendant Choice Hotels denies it violated any laws with regard to Plaintiffs.**

54.     On November 7, 2015, the Quality Inn discriminated against Mr. McLaurin when it denied him service at the breakfast bar equal to that provided to guests of other races.

**ANSWER:     The allegations contained in Paragraph 54 of the Complaint are alleged against Defendant Quality Inn; thus, a response from Defendant Choice Hotels is not required.  To the extent that any additional response is deemed to be required, Defendant Choice Hotels lacks sufficient information to either admit or deny the allegations contained in**

19

Paragraph 54 of the Complaint. **To the extent that any further response is deemed to be required, Defendant Choice Hotels denies the allegations contained in Paragraph 54.**

55.     Mr. McLaurin protested this unfair treatment to employees of the Quality Inn.  He also informed the Quality Inn employees that he intended to file a complaint against the hotel.

**<u>ANSWER</u>:     The allegations contained in Paragraph 55 of the Complaint are alleged against Defendant Quality Inn; thus, a response from Defendant Choice Hotels is not required.  To the extent that any additional response is deemed to be required, Defendant Choice Hotels lacks sufficient information to either admit or deny the allegations contained in Paragraph 55 of the Complaint.  To the extent that any further response is deemed to be required, Defendant Choice Hotels denies the allegations contained in Paragraph 55.**

56.     As a result of Mr. McLaurin's protest and stated intention to file a complaint, employees of the Quality Inn evicted him from the hotel. This constituted retaliation in violation of Section1981.

**<u>ANSWER</u>:     The allegation contained in Paragraph 56 of the Complaint that states, "[t]his constituted retaliation in violation of Section 1981" is a legal conclusion that does not require a response from Defendant Choice Hotels.  To the extent a response is necessary, Defendant Choice Hotels lacks sufficient information to either admit or deny the remaining allegations contained in Paragraph 56 of the Complaint.  To the extent that any additional response is deemed to be required, Defendant Choice Hotels denies the allegations contained in Paragraph 56.**

57.     The Quality Inn is liable for the retaliatory actions of its employees committed on its behalf and for its benefit and which it directed and/or ratified.

**<u>ANSWER</u>:     The allegations contained in Paragraph 57 of the Complaint are alleged against Defendant Quality Inn; thus, a response from Defendant Choice Hotels is not**

**required. To the extent that any additional response is deemed to be required, Defendant Choice Hotels denies the allegations contained in Paragraph 57.**

58. The discriminatory acts of the Quality Inn and its employees were committed with malice or with reckless indifference to Mr. McLaurin's rights.

**ANSWER:** **The allegations contained in Paragraph 58 of the Complaint are alleged against Defendant Quality Inn; thus, a response from Defendant Choice Hotels is not required. To the extent that any additional response is deemed to be required, Defendant Choice Hotels denies the allegations contained in Paragraph 58.**

59. Choice Hotels is liable for the acts of its franchisee, the Quality Inn, because it intentionally held out its franchisee to its customer as a member of the Quality Inn brand, knowing that doing so was likely to, and in this case did, attract customers in reliance on the quality of service provided by Choice Hotels.

**ANSWER:** **Defendant Choice Hotels denies the allegations contained in Paragraph 59 of the Complaint.**

60. Choice Hotels is also liable for the acts of its franchisee, the Quality Inn, because it attracts and directs customers, including Mr. McLaurin, to the Quality Inn through the Choice Privileges loyalty program.

**ANSWER:** **Defendant Choice Hotels denies the allegations contained in Paragraph 60 of the Complaint.**

61. Choice Hotels is also liable for the acts of its franchisee, the Quality Inn, because it exercises significant control over the actions of the Quality Inn, including requiring the Quality Inn to offer its guests free breakfast.

**ANSWER:** **Defendant Choice Hotels denies the allegations contained in Paragraph 61 of the Complaint.**

62.     Breakfast service is within the actual and apparent authority given by Choice Hotels to the employees of its franchisees, including the Quality Inn.

**ANSWER:** **Defendant Choice Hotels denies the allegations contained in Paragraph 62 of the Complaint.**

63.     As a result of Defendants' wrongful conduct, Mr. McLaurin is entitled to compensatory and punitive damages, as well as attorneys' fees and expenses.

**ANSWER:** **Defendant Choice Hotels denies it engaged in wrongful conduct and denies the remaining allegations contained in Paragraph 63 of the Complaint.**

**COUNT III**
**Violation of Prince George's County Code § 2-220**
**(On behalf of all Plaintiffs against all Defendants)**

64.     The allegations of fact contained in the preceding paragraphs are incorporated by reference.

**ANSWER:** **Defendant Choice Hotels restates and reincorporates by reference its answers and responses to Paragraphs 1 through 63 above as if fully set forth herein, in response to Paragraph 64 of the Complaint.**

65.     The Prince George's County Code forbids the owner or operator of a place of public accommodation, or his agent or employee, from denying to any person on account of race any of the accommodations, advantages, facilities, or privileges available at their place of public accommodation.

**ANSWER:** **Paragraph 65 of the Complaint contains legal conclusions that do not require a response from Defendant Choice Hotels.  To the extent a response is necessary, Defendant Choice Hotels denies it violated any laws with regard to Plaintiffs.**

66. The Quality Inn is a place of public accommodation because it provides lodging to transient guests.

**ANSWER:** **Paragraph 66 of the Complaint contains legal conclusions that do not require a response from Defendant Choice Hotels. To the extent a response is necessary, Defendant Choice Hotels denies it violated any laws with regard to Plaintiffs.**

67. Mr. McLaurin and Ms. Laws met the standards for occupancy and had a contract with the Quality Inn for accommodations that included a free breakfast.

**ANSWER:** **Defendant Choice Hotels lacks sufficient information to either admit or deny the allegations contained in Paragraph 67 of the Complaint. To the extent that any additional response is deemed to be required, Defendant Choice Hotels denies the allegations contained in Paragraph 67.**

68. Pursuant to a racially discriminatory policy, the Quality Inn required black guests, but not guests of other races, to produce tickets to obtain the breakfast that was included in the cost of their rooms. Because Mr. McLaurin and Ms. Laws are black, the Quality Inn and its employee singled them out at the breakfast bar and forced them to prove their right to eat there, while guests of other races were not similarly treated. Thus, the Quality Inn denied Mr. McLaurin and Ms. Laws the equal enjoyment of all of the accommodations, facilities, and privileges that were available to hotel guests of other races and provided services to Mr. McLaurin and Ms. Laws in a hostile, unreasonable, and discriminatory manner on account of their race.

**ANSWER:** **The allegations contained in Paragraph 68 of the Complaint are alleged against Defendant Quality Inn; thus, a response from Defendant Choice Hotels is not required. To the extent that any additional response is deemed to be required, Defendant**

**Choice Hotels lacks sufficient information to either admit or deny the allegations contained in Paragraph 68 of the Complaint. To the extent that any additional response is deemed to be required, Defendant Choice Hotels denies the allegations contained in Paragraph 68.**

69. The Quality Inn is liable for its own discriminatory policy as well as for the discriminatory acts of its employees committed on its behalf and for its benefit and which it directed and/or ratified.

**<u>ANSWER</u>: The allegations contained in Paragraph 69 of the Complaint are alleged against Defendant Quality Inn; thus, a response from Defendant Choice Hotels is not required. To the extent that any additional response is deemed to be required, Defendant Choice Hotels denies the allegations contained in Paragraph 69.**

70. The discriminatory acts of the Quality Inn and its employees were committed with malice or with reckless indifference to Mr. McLaurin and Ms. Laws's rights.

**<u>ANSWER</u>: The allegations contained in Paragraph 70 are alleged against Defendant Quality Inn; thus, a response from Defendant Choice Hotels is not required. To the extent that any additional response is deemed to be required, Defendant Choice Hotels lacks sufficient information to either admit or deny the allegations contained in Paragraph 70 of the Complaint. To the extent that any additional response is deemed to be required, Defendant Choice Hotels denies the allegations contained in Paragraph 70.**

71. Choice Hotels is liable for the acts of its franchisee, the Quality Inn, because it intentionally held out its franchisee to customers as a member of the Quality Inn brand, knowing that doing so was likely to, and in this case did, attract customers in reliance on the quality of service provided by Choice Hotels.

**ANSWER:** **Defendant Choice Hotels denies the allegations contained in Paragraph 71 of the Complaint.**

72.     Choice Hotels is also liable for the acts of its franchisee, the Quality Inn, because it attracts and directs customers, including Mr. McLaurin, to the Quality Inn through the Choice Privileges loyalty program.

**ANSWER:** **Defendant Choice Hotels denies the allegations contained in Paragraph 72 of the Complaint.**

73.     Choice Hotels is also liable for the acts of its franchisee, the Quality Inn, because it exercises significant control over the actions of the Quality Inn, including requiring the Quality Inn to offer its guests free breakfast.

**ANSWER:** **Defendant Choice Hotels denies the allegations contained in Paragraph 73 of the Complaint.**

74.     Breakfast service is within the actual and apparent authority given by Choice Hotels to the employees of its franchisees, including the Quality Inn.

**ANSWER:** **Defendant Choice Hotels denies the allegations contained in Paragraph 74 of the Complaint.**

75.     On April 27, 2016, Mr. McLaurin and Ms. Laws filed a complaint with the Prince George's County Human Relations Commission against Quality Inn and Choice Hotels for public accommodations discrimination and retaliation. Mr. McLaurin and Ms. Laws recounted the allegations of fact above in their complaint.

**ANSWER:** **Defendant Choice Hotels lacks sufficient information to either admit or deny the allegations contained in Paragraph 75 of the Complaint. To the extent that any**

additional response is deemed to be required, Defendant Choice Hotels denies the allegations contained in Paragraph 75.

76.     As a result of Defendants' wrongful conduct, Mr. McLaurin and Ms. Laws are entitled to compensatory and punitive damages, including damages for humiliation and embarrassment, as well as their attorneys' fees and expenses.

**ANSWER:     Defendant Choice Hotels denies it engaged in wrongful conduct and denies the remaining allegations contained in Paragraph 76.**

## COUNT IV
### Retaliation in violation of Prince George's County Code § 2-209
### (On behalf of Plaintiff Hermeion Jay McLaurin against all Defendants)

77.     The allegations of fact contained in the preceding paragraphs are incorporated by reference.

**ANSWER:     Defendant Choice Hotels restates and reincorporates by reference its answers and responses to Paragraphs 1 through 76 above as if fully set forth herein, in response to Paragraph 77 of the Complaint.**

78.     The Prince George's County code prohibits retaliation against persons for protesting a violation of their right to enjoy the accommodations, facilities, advantages, or privileges available at a place of public accommodation without regard to race.

**ANSWER:     Paragraph 78 of the Complaint contains legal conclusions that do not require a response from Defendant Choice Hotels.  To the extent a response is necessary, Defendant Choice Hotels Choice Hotels denies it violated any laws with regard to Plaintiffs.**

79.     On November 7, 2015, the Quality Inn discriminated against Mr. McLaurin when it denied him service at the breakfast bar equal to that provided to guests of other races.

**ANSWER:** The allegations contained in Paragraph 79 of the Complaint are alleged against Defendant Quality Inn; thus, a response from Defendant Choice Hotels is not required. To the extent that any additional response is deemed to be required, Defendant Choice Hotels lacks sufficient information to either admit or deny the allegations contained in Paragraph 79 of the Complaint. To the extent that any additional response is deemed to be required, Defendant Choice Hotels denies the allegations contained in Paragraph 79.

80. Mr. McLaurin protested this unfair treatment to employees of the Quality Inn. He also informed the Quality Inn employees that he intended to file a complaint against the hotel.

**ANSWER:** Defendant Choice Hotels lacks sufficient information to either admit or deny the allegations contained in Paragraph 80 of the Complaint. To the extent that any additional response is deemed to be required, Defendant Choice Hotels denies the allegations contained in Paragraph 80.

81. As a result of Mr. McLaurin's protest and stated intention to file a complaint, employees of the Quality Inn evicted him from the hotel. This constituted retaliation in violation of the Prince George's County Code.

**ANSWER:** The allegations contained in Paragraph 81 of the Complaint are alleged against Defendant Quality Inn; thus, a response from Defendant Choice Hotels is not required. Defendant Choice Hotels lacks sufficient information to either admit or deny the allegations contained in Paragraph 81 of the Complaint. To the extent that any additional response is deemed to be required, Defendant Choice Hotels denies the allegations contained in Paragraph 81.

82. The Quality Inn is liable for the retaliatory actions of its employees committed on its behalf and for its benefit and which it directed and/or ratified.

**ANSWER:** The allegations contained in Paragraph 82 of the Complaint are alleged against Defendant Quality Inn; thus, a response from Defendant Choice Hotels is not required. To the extent that any additional response is deemed to be required, Defendant Choice Hotels denies the allegations contained in Paragraph 82.

83. The discriminatory acts of the Quality Inn and its employees were committed with malice or with reckless indifference to Mr. McLaurin's rights.

**ANSWER:** The allegations contained in Paragraph 83 of the Complaint are alleged against Defendant Quality Inn; thus, a response from Defendant Choice Hotels is not required. To the extent that any additional response is deemed to be required, Defendant Choice Hotels denies the allegations contained in Paragraph 83.

84. Choice Hotels is liable for the acts of its franchisee, the Quality Inn, because it intentionally held out its franchisee to customers as a member of the Quality Inn brand, knowing that doing so was likely to, and in this case did, attract customers in reliance on the quality of service provided by Choice Hotels.

**ANSWER:** Defendant Choice Hotels denies the allegations contained in Paragraph 84 of the Complaint.

85. Choice Hotels is also liable for the acts of its franchisee, the Quality Inn, because it attracts and directs customers, including Mr. McLaurin, to the Quality Inn through the Choice Privileges loyalty program.

**ANSWER:** Defendant Choice Hotels denies the allegations contained in Paragraph 85 of the Complaint.

86. Choice Hotels is also liable for the acts of its franchisee, the Quality Inn, because it exercises significant control over the actions of the Quality Inn, including requiring the Quality Inn to offer its guests free breakfast.

**ANSWER:** Defendant Choice Hotels denies the allegations contained in Paragraph 86 of the Complaint.

87.     The Breakfast service is within the actual and apparent authority given by Choice Hotels to the employees of its franchisees, including the Quality Inn.

**ANSWER:** Defendant Choice Hotels denies the allegations contained in Paragraph 87 of the Complaint.

88.     On April 27, 2016, Mr. McLaurin a complaint with the Prince George's County Human Relations Commission against Quality Inn and Choice Hotels for public accommodations discrimination and retaliation. Mr. McLaurin recounted the allegations of fact above in his complaint.

**ANSWER:** Defendant Choice Hotels lacks sufficient information to either admit or deny the allegations contained in Paragraph 88 of the Complaint. To the extent that any additional response is deemed to be required, Defendant Choice Hotels denies the allegations contained in Paragraph 88.

89.     As a result of Defendants' wrongful conduct, Mr. McLaurin is entitled to compensatory and punitive damages, including damages for humiliation and embarrassment, as well as attorneys' fees and expenses.

**ANSWER:** Defendant Choice Hotels denies it engaged in wrongful conduct and denies the remaining allegations contained in Paragraph 89 of the Complaint.

## RESPONSE TO RELIEF REQUESTED

Defendant Choice Hotels denies that it violated any laws and denies that Plaintiffs are entitled to any of the relief requested in the "Relief Sought" Paragraph of Plaintiffs' Complaint.

## RESPONSE TO DEMAND FOR JURY TRIAL

Defendant Choice Hotels does not consent to the trial by jury of any issue not required by law to be tried by a jury.

WHEREFORE, Defendant Choice Hotels International, Inc. respectfully requests that Plaintiffs' Complaint and Demand for Jury Trial be dismissed with prejudice; that judgment be entered in favor of Defendant Choice Hotels and against Plaintiffs; that the Court award Defendant Choice Hotels its costs and attorneys' fees incurred in defending this action; and that the Court award Defendant Choice Hotels any further and other relief the Court deems just and equitable.

## DEFENDANT CHOICE HOTEL'S STATEMENT OF AFFIRMATIVE AND OTHER DEFENSES

Subject to a reasonable opportunity for further investigation, inquiry and discovery, Defendant Choice Hotels alleges the following additional defenses:

1.     Some or all of Plaintiffs' claims fail to state a claim upon which relief can be granted.

2.     Plaintiffs' claims are time barred, in whole or in part, by the applicable statute of limitations.

3.     Plaintiffs' claims are time barred, in whole or in part, to the extent that they were not presented to the Prince George's County Human Relations Commission in a timely fashion.

4.     Plaintiffs' claims in this action are barred, in whole or in part, to the extent that they exceed the scope of/or are inconsistent with the charge(s) filed with the Prince George's County Human Relations Commission.

5.     Defendant Choice Hotels did not treat Plaintiffs differently than it treated similarly situated hotel guests outside Plaintiffs' alleged protected classes.

6.     Any request for punitive damages is barred by Defendant Choice Hotel's good faith efforts to comply with all applicable laws.

7.      Defendant Choice Hotels is not liable for punitive damages because neither Defendant Choice Hotels nor any of its employees sufficiently high in its corporate hierarchy committed any act with malice or reckless indifference to Plaintiffs' protected rights, or approved, authorized, or notified, or had actual knowledge of any such acts.

8.      Defendant Choice Hotel's decisions regarding or affecting Plaintiffs were based upon legitimate, lawful, nondiscriminatory, non-retaliatory, and reasonable business justifications unrelated to their legal rights under law.

9.      Defendant denies than any action or inaction taken towards Plaintiffs was motivated by race.  More specifically, any action(s) or inaction(s) that Plaintiffs contend was discriminatory was based upon factors other than race.  Alternatively, in the event that the Court or a jury should ever conclude that race was a motivating factor in any of the action(s) or inaction(s) challenged by Plaintiffs, which Defendant Choice Hotels expressly denies, Defendant Choice Hotels affirmatively avers the same would have occurred absent consideration of race.

10.      If any improper, illegal, or discriminatory acts were taken by any person against Plaintiffs, it was outside the course and scope of that person's employment or business relationship with Defendant Choice Hotels, contrary to Defendant Choice Hotel's policies, and was not ratified, confirmed or approved by Defendant Choice Hotels.  Thus, any such actions cannot be attributed or imputed to Defendant Choice Hotels.

11.      Defendant Choice Hotels did not have actual or apparent authority to direct the actions of Defendant Quality Inn.

12.      Defendant Choice Hotels did not have actual or constructive notice of any alleged unlawful action or inaction against Plaintiffs.  To the extent that Defendant Choice Hotels was

aware of any allegedly unlawful behavior towards Plaintiffs, Defendant Choice Hotels exercised reasonable case to prevent and correct promptly the allegedly improper behavior.

13.     Plaintiffs' claimed damages, if any, were caused by their own conduct or by the conduct of other persons or entities over whom/which Defendant had no control and for whose conduct Defendant is not liable.

14.     Defendant Choice Hotels denies it violated any law, denies that it damaged Plaintiffs, and denies that Plaintiffs are entitled to any damages.  Nonetheless, to the extent Plaintiffs may be entitled to damages, those damages must be reduced or denied to the extent Plaintiffs have failed to mitigate their damages.

15.     Plaintiffs are not entitled to equitable relief.

16.     Plaintiffs are not entitled to any request for declaratory and/or injunctive relief because Plaintiffs are unable to establish the requisites for the issuance of equitable relief.

17.     Plaintiffs' claims for damages are speculative in nature and should therefore be stricken.

18.     To the extent that Defendant Choice Hotels has not responded to any allegations in the Complaint, Defendant Choice Hotels specifically denies the same.

19.     Defendant Choice Hotels expressly reserves the right to assert additional defenses as they become evident through investigation and/or discovery.

WHEREFORE, Defendant Choice Hotels International, Inc. respectfully requests that Plaintiffs' Complaint and Demand for Jury Trial be dismissed with prejudice; that judgment be entered in favor of Defendant Choice Hotels and against Plaintiffs; that the Court award Defendant Choice Hotels its costs and attorneys' fees incurred in defending this action; and that

the Court award Defendant Choice Hotels any further and other relief the Court deems just and equitable.

Respectfully Submitted,

_____/s/ John B. Flood_____

John B. Flood (MD Bar No. 27925)
OGLETREE, DEAKINS, NASH,
   SMOAK & STEWART, P.C.
1909 K Street, NW, Suite 1000
Washington, DC 20006
Tel.:  (202) 887-0855
Fax: (202) 887-0866
Email: john.flood@ogletreedeakins.com

*Counsel for Defendant*
*Choice Hotels International, Inc.*

Dated: March 20, 2017

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| HERMEION JAY MCLAURIN and JANICE LAWS, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 8:17-cv-00489-PX |
| PICCARD ENTERPRISES, LLC, and CHOICE HOTELS INTERNATIONAL, INC.., | ) ) ) ) | |
| Defendants. | ) | |

## CERTIFICATE OF SERVICE

I hereby certify that on this 20th day of March, 2017, a true and correct copy of the foregoing was filed via the Court's CM/ECF System, which caused a copy to be served on Plaintiffs' counsel of record. The foregoing was also served on Defendant Piccard Enterprises, LLC by depositing a copy in the United States mail with sufficient first-class postage pre-paid:

Andrew D. Freeman, Esq.
Jean M. Zachariasiewicz, Esq.
Abigail A. Graber, Esq.
Brown, Goldstein & Levy, LLP
120 E. Baltimore St., Suite 1700
Baltimore, MD 21202
Tel: (410) 962-1030
E-mail: adf@browngold.com
jmz@browngold.com
agraber@browngold.com
*Counsel for Plaintiffs*

PICCARD ENTERPRISES, LLC,
c/o Richard B. Schreibstein, Registered Agent
Schreibstein & Tucker, LLC
50 Corporate Center
10500 Little Patuxent Pkwy., Suite 305
Columbia, MD 21044
*Defendant*


      /s/ John B. Flood
John B. Flood
OGLETREE, DEAKINS, NASH,
 SMOAK & STEWART, P.C.
1909 K Street, N.W., Suite 1000
Washington, D.C. 20006
Tel: (202) 887-0855
Fax: (202) 887-0866
E-mail: john.flood@ogletreedeakins.com
*Counsel for Defendant*
*Choice Hotels International, Inc.*

29137623.1